UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PEDRO SHERMAN, ) | |
| ) | |
| PLAINTIFF ) | |
| ) | |
| VS. ) | CAUSE NO). 1:18-CV-2258 RLM-DML |
| ) | |
| ROBERT WILKIE,[1] SECRETARY, ) | |
| DEPARTMENT OF VETERANS ) | |
| AFFAIRS ) | |
| ) | |
| DEFENDANT ) | |

OPINION AND ORDER

Pedro Sherman worked at the Richard L. Roudebush VA Medical Center for almost a year before he was terminated. He filed this action alleging that his former employer harassed or allowed him to be harassed due to his sex and terminated him in retaliation for protected activity in violation of Title VII and 42 U.S.C. § 2000e *et seq.* Robert Wilkie, secretary of the Department of Veterans Affairs, brings this motion for summary judgment on both counts. For the reasons set forth below, the court grants the Secretary's motion for summary judgment as to Count II and dismisses Count I of Mr. Sherman's complaint.

I. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the

---

[1] Robert Wilkie was automatically substituted as the defendant in this case pursuant to Federal Rule of Civil Procedure 25(d) when he became the Secretary of the Department of Veterans Affairs.

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, we accept the non-movant's evidence as true and draw all inferences in his favor. Id. at 255. The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

## II. STATEMENT OF FACTS

Pedro Sherman began working at the Veterans Canteen Service at the Richard L. Roudebush VA Medical Center in Indianapolis in April 2016. Mr. Sherman started as a manager of the canteen's coffee shop. He reported to canteen chief Nancy Cheek.

Mr. Sherman alleges that within his first few weeks on the job, a man who he later learned was Stephen Perroni came into the coffee shop and complimented his tie. Mr. Perroni was an employee with the medical center's Environmental Management Service. Mr. Sherman alleges that Mr. Perroni would come into the coffee shop multiple times a week to compliment his tie or

tell him he looked nice. Mr. Sherman says he suspected that the comments were flirtatious, and they made him uncomfortable. He told Ms. Cheek a couple of weeks later that he thought a man who was patronizing the coffee shop was hitting on him.

Mr. Perroni went to the coffee shop as often as three to five days a week and talked to Mr. Sherman and complimented his ties and appearance, Mr. Sherman says. At one point, Mr. Perroni asked him if a wife or girlfriend picked out his clothes. When Mr. Sherman asked why Mr. Perroni was interested in his ties, Mr. Perroni said he had a "necktie fetish." Mr. Sherman says that he thought Mr. Perroni was referring to sexual activity with neckties.

Mr. Sherman was walking down the hallway in September 2016 when he encountered Mr. Perroni and another employee. He says that Mr. Perroni asked if he could straighten Mr. Sherman's tie, and Mr. Sherman responded that he would defend himself if Mr. Perroni touched him. Mr. Sherman told Ms. Cheek about the encounter.

In October 2016, Mr. Sherman told Ms. Cheek that he couldn't tolerate Mr. Perroni's comments any longer and "something had to be done," he says. Ms. Cheek called Andrew Hunter, an equal employment specialist in the medical center's Equal Employment Opportunity office, to report the complaint. Mr. Hunter testified during his deposition that he contacted Mr. Perroni's supervisor about the complaint and told him that if the person bothering Mr. Sherman was Mr. Perroni, Mr. Perroni should stop. Mr. Hunter later confirmed that the person Mr. Sherman described was Mr. Perroni. Mr. Sherman says he met with Mr. Hunter in person the next day, and in December 2016, he filed a formal

3

complaint with the EEOC. Mr. Sherman testified during his deposition that Mr. Perroni didn't speak to him again after Mr. Sherman launched his complaint in October.

Ms. Cheek terminated Mr. Sherman from his position in March 2017. Mr. Sherman says that two days later, he amended his complaint with the EEO office to include a claim for retaliation. Mr. Sherman received a final agency decision on his charge in June 2018.

### III. Discussion

Mr. Sherman brings two claims: (1) that the defendant retaliated against him for engaging in protected activity; and (2) that the defendant harassed or allowed him to be harassed due to his sex. The Secretary argues that there is no genuine issue of material fact and he is entitled to summary judgment in his favor on both claims.

*A. Sexual Harassment in Violation of 42 U.S.C. § 2000e et seq.*

The Secretary argues that Mr. Sherman can't establish a prima facie case for sexual harassment in violation of Title VII. To establish his claim. Mr. Sherman must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on his sex; (3) "the harassment was sufficiently severe or pervasive so as to alter the condition of [his] employment and create a hostile or abusive atmosphere;" and (4) there's a basis for employer liability. Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 788 (7th Cir. 2007) (*citing* Kampmier v. Emeritus Corp., 472 F.3d 930, 940 (7th Cir. 2007)).

The Secretary argues that Mr. Sherman can't prove the third element of his claim, that the harassment he experienced was so severe or pervasive as to alter the condition of employment or create a hostile or abusive atmosphere. The harassment doesn't need to rise to the level of "hellishness," it "must be only so severe or pervasive so as to affect the terms and conditions of employment." Id. (*citing* Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993)). Some courts analyze this element by "looking… for evidence that the workplace was both subjectively and objectively offensive." that Johnson v. Advocate Health & Hosps. Corp., 892 F.3d at 900 (*citing* Cole v. Bd. of Trs. of N. Ill. Univ., 838 F.3d 888, 896 n.6 (7th Cir. 2016), *cert. denied*, ––– U.S. –––, 137 S. Ct. 1614 (2017)).

The parties don't dispute that Mr. Perroni's conduct was subjectively offensive. But the Secretary argues that Mr. Sherman hasn't shown that the conduct was also objectively offensive. To determine whether harassment was objectively offensive, the court considers "the frequency of the conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the alleged victim's work performance." Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 788 (7th Cir. 2007) (*citing* Hostetler v. Quality Dining, Inc., 218 F.3d 798, 806-807 (7th Cir. 2000)).

Mr. Perroni complimented Mr. Sherman's ties frequently, referred to a fetish with neckties, and asked about wives and girlfriends. One time, he asked to fix Mr. Sherman's tie. He wasn't Mr. Sherman's supervisor; they didn't even work in the same department. In light of all of the circumstances in this case and considering the conduct the court of appeals has found insufficiently severe

5

or pervasive to support a sexual harassment claim, no reasonable juror could conclude that Mr. Perroni's behavior meets the threshold for objectively offensive behavior under Title VII. *See* Gates v. Bd. of Educ. of the City of Chicago, 916 F.3d 631, 638 (7th Cir. 2019) (the distinction between conduct by a supervisor and a co-worker is "critical" in determining whether the conduct was severe or pervasive); Equal Employment Opportunity Comm'n v. Costco Wholesale Corp., 903 F.3d 618, 625 (7th Cir. 2018) (discussing the holding of Baskerville v. Culligan International Co., 50 F.3d 428, 430 (7th Cir. 1995), and noting that a supervisor "making masturbation gestures while conversing with [the plaintiff], grunting suggestively as she turned to leave his office, referring to her as a 'pretty girl,' and commenting that his office did not get 'hot' until she walked in" wasn't enough to create a hostile work environment); McPherson v. City of Waukegan, 379 F.3d 430, 438–439 (7th Cir. 2004) (no hostile work environment despite a supervisor who asked about the color of the plaintiff's bra, pulled back the plaintiff's tank top strap to see the bra, and suggested he check on her at home when she was sick); Adusumilli v. City of Chicago, 164 F.3d 353, 361–362 (7th Cir. 1998) (no hostile work environment when a co-worker made sexual comments and touched the plaintiff's buttocks, arm, or fingers on four separate occasions).

The Secretary argues that Mr. Sherman can't find that Mr. Perroni's conduct was discrimination based on sex, either. The Secretary is entitled to judgment as a matter of law on Count II because the conduct wasn't pervasive or severe, so this argument needn't be addressed.

*B. Retaliation in Violation of 42 U.S.C. § 2000 et seq.*

The Secretary argues that summary judgment should be granted in his favor on Mr. Sherman's retaliation claim because Mr. Sherman hasn't exhausted his administrative remedies and can't meet the prima facie burden for a retaliation claim.

A plaintiff bringing a Title VII generally must file a timely charge with the Equal Employment Opportunity Commission encompassing the acts complained of as a prerequisite to filing suit in federal court. Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985) (*citing* Alexander v. Gardner-Denver Co., 415 U.S. 36, 47 (1974)). If the plaintiff is a federal employee, he must exhaust his remedies in part by "filing a timely complaint with the agency after contacting an EEO counselor." Reynolds v. Tangherlini, 737 F.3d 1093, 1099 (7th Cir. 2013) (*citing* 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614; Hill v. Potter, 352 F.3d 1142, 1145 (7th Cir. 2003); Brown v. Gen. Servs. Admin., 425 U.S. 820, 832 (1976)). Mr. Sherman cites McKenzie v. Illinois Department of Transportation for the proposition that he isn't required to file a second charge with the EEO office alleging he was retaliated against for filing the first charge. 92 F.3d 473, 482-483 (7th Cir. 1996). But a plaintiff who amends his original charge and doesn't mention retaliatory acts that allegedly occurred after his original charge was filed waives those claims. McKenzie v. Illinois D.O.T., 92 F.3d at 483 ("Because each of those incidents of retaliation could have been—and should have been—included in [the plaintiff's] administrative charges, they cannot now serve as the basis of the retaliation claim alleged in her complaint.").

The Secretary argues that throughout the administrative process, Mr. Sherman said he was retaliated against for reporting that Ms. Cheek told him to pad his inventory report, not for reporting sexual harassment. The Secretary cites a statement Mr. Sherman made in rebuttal testimony to the EEO investigator: "I believe I was terminated in retaliation for being a whistleblower. I reported Nancy Cheek for unethical behavior to Les McArthur via email weeks before I was terminated." Mr. Sherman also gave a telephonic affidavit to an investigator during which he said he believed he was terminated for reporting two incidents involving Ms. Cheek, neither of which had anything to do with Mr. Perroni's alleged sexual harassment. Mr. Sherman hasn't raised any evidence that creates a dispute as to whether he alleged retaliation for reporting sexual harassment in his amended complaint. Mr. Sherman didn't exhaust his administrative remedies on that claim. It can't be raised in federal court.

## IV. Conclusion

Based on the foregoing, the court GRANTS the defendant's motion for summary judgment [Doc. No. 36] with respect to Count II of the complaint and DISMISSES Count I of the complaint. The Clerk is directed to enter the judgment accordingly.

SO ORDERED.

ENTERED:   July 24, 2020

　　　　　　　　　　　　　　　　　　　　　　 /s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　　　　　　　Judge, United States District Court

Distribution: All electronically registered counsel of record.